UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JHONNY SEGUNDO SANGRONIS,

        Petitioner,

v.

UNKNOWN PARTY et al.,

        Respondents.

_____/

Case No. 1:26-cv-88

Hon. Hala Y. Jarbou

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action on January 9, 2026, by filing a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Pet., ECF No. 1) and an emergency motion for immediate release or, in the alternative, for [an] emergency bond hearing (ECF No. 2). Petitioner has also filed a motion for leave to file supplement authority (ECF No. 9). For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, dismiss Petitioner's emergency motion (ECF No. 2) as moot, and will grant Petitioner's motion for leave to file supplemental authority (ECF No. 9).

## Discussion

### I. Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act (INA), and

issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Respondents to release Petitioner or ordering Respondents to conduct a bond hearing to satisfy the requirements of due process. (Pet., ECF No. 1, PageID.7.) Petitioner also filed an emergency motion for immediate release or, alternatively, for an emergency bond hearing (ECF No. 2) and a motion for leave to file supplemental authority (ECF No. 9).

In an order entered on January 14, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 6.) Respondents filed their response on January 20, 2026 (ECF No. 7).

## II.    Factual Background

Petitioner is a native and citizen of Venezuela. (Pet., ECF No. 1, PageID.1; Pinson Decl. ¶ 4, ECF No. 7-1, PageID.93.) On December 28, 2017, Petitioner applied for admission into the United States at the Miami International Airport by presenting himself to Customs and Border Protection for admission with a B-2 visitor's visa. (Pinson Decl. ¶ 4, ECF No. 7-1, PageID.94.) Customs and Border Protection charged Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the INA and issued Petitioner a notice and order of expedited removal. (*Id.* ¶¶ 5–6.) Petitioner was removed to Venezuela. (*Id.* ¶ 7.)

On April 19, 2021, United States Border Patrol encountered Petitioner near Carrizo Springs, Texas, and processed him for reinstatement of his expedited removal order. (*Id.* ¶ 8; Notice of Intent/Decision to Reinstate Prior Order, ECF No. 7-2, PageID.98.) Petitioner expressed a fear of returning to Venezuela and, on May 25, 2021, was released from custody on an order of supervision. (Pinson Decl. ¶ 8, ECF No. 7-1, PageID.94; Order of Supervision, ECF No. 7-3, PageID.100.) Petitioner then filed an application for asylum and withholding of removal. (Pinson Decl. ¶ 9, ECF No. 7-1, PageID.95.)

2

On February 2, 2025, Petitioner was granted temporary protected status (TPS) from Venezuela; however, that program was terminated on November 20, 2025. (*Id.* ¶ 10); *see Noem v. Nat'l TPS All.*, 146 S.Ct. 23, 24 (2025) (allowing the termination to take effect pending the Government's appeal).

On September 9, 2025, ICE officers arrested Petitioner during Petitioner's scheduled ICE check-in. (Pinson Decl. ¶ 11, ECF No. 7-1, PageID.95.) ICE provided Petitioner with a notice of revocation of release and conducted an informal interview regarding the revocation of Petitioner's order of supervision. (*Id.* ¶ 11.)

On December 12, 2025, ICE referred Petitioner's claimed fear of returning to Venezuela to United States Citizenship and Immigration Services (USCIS). (*Id.* ¶ 12.) USCIS accepted the referral the following day. (*Id.* ¶ 13.) If USCIS finds that Petitioner has a reasonable fear of returning to Venezuela, Petitioner will be placed in withholding-only proceedings. (*Id.* ¶ 14, PageID.96.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Merits Discussion

The parties agree that Petitioner is subject to a final order of removal. As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231.[1] However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In response, Respondents argue that Petitioner's continued "detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis* 533 U.S. 678, 701 (2001)." (Resp., ECF No. 7, PageID.87.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). 8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). It is undisputed that Petitioner was ordered removable. And given that Petitioner's expedited removal order was reinstated on April 23, 2021, (Notice of Intent/Decision

---

[1] Petitioner contends that he was unlawfully detained by ICE "despite being lawfully protected under [TPS] then in effect for Venezuelan nationals." (Pet., ECF No. 1, PageID.2.) However, as discussed above, the Supreme Court in *National TPS Alliance*, allowed the termination of TPS for Venezuelan nationals to take effect "pending the disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such writ is timely sought." *Nat'l TPS All.*, 146 S.Ct. at 24. Petitioner has filed a motion for leave to file, as supplemental authority, the recent decision of the Ninth Circuit in *National TPS Alliance v. Noem*, No. 25-5724, 2026 WL 226573 (9th Cir. Jan. 28, 2026), which set aside the vacaturs and terminations of Venezuelan and Haitian nationals as unlawful (ECF No. 9). The Court will grant Petitioner's motion. However, because the Government still has time to file a timely petition for writ of certiorari, the stay remains in effect under *National TPS Alliance. Nat'l TPS All.*, 146 S. Ct. 23.

to Reinstate Prior Order, ECF No. 7-2, PageID.98), the 90-day removal period has obviously expired.

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

"Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the

---

[2] The Court notes that the Supreme Court has held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

5

default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

The record shows that Petitioner was initially detained from April 19, 2021, (Pinson Decl. ¶ 8, ECF No. 7-1, PageID.94) until he was released on an order of supervision on May 25, 2021 (Order of Supervision, ECF No. 7-3, PageID.100). He has again been detained from September 9, 2025, until the present. (Pinson Decl. ¶ 11, ECF No. 7-1, PageID.95.) His detention, therefore, has exceeded the presumptively reasonable six-month limit set forth by the Supreme Court in *Zadvydas*. *See, e.g., Kuot v. Bondi*, No. 2:25-CV-02313-BAT, 2025 WL 3763930, at *2 (W.D. Wash. Dec. 30, 2025) (considering the total combined detention time in determining whether the petitioner had been detained for more than six months under *Zadvydas*); *Jimenez Chacon v. Lyons*, No. 2:25-CV-977-DHU-KBM, 2025 WL 3496702, at *7 (D.N.M. Dec. 4, 2025) (same).

The record before the Court provides a good reason to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Here, Petitioner's fear claim has only recently been referred to and accepted by USCIS. (Pinson Decl. ¶¶ 12, 13, PageID.95.) There is nothing before the Court to indicate that USCIS is expected to render a decision in the near future. If USCIS finds that Petitioner has a reasonable fear of returning to Venezuela, Petitioner will be placed in withholding-only proceedings. (*Id.* ¶ 14, PageID.96.) Respondents have also not provided the Court with any information that would suggest that these proceedings will be resolved in the reasonably foreseeable future.

Because Petitioner has met his burden of showing that removal is not reasonably foreseeable, Respondents must respond with evidence sufficient to rebut that showing. *Zadvydas*,

6

533 U.S. at 701. They have not done so. The Court, therefore, will grant Petitioner's § 2241 petition.

## V. Pending Emergency Motion, Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court will dismiss Petitioner's emergency motion for immediate release or, in the alternative, for [an] emergency bond hearing (ECF No. 2) as moot, and does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI. Proper Respondents

Respondents argue that Petitioner has failed to name a proper Respondent because he has not named the Detroit ICE Field Office Director as a Respondent.[3] The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *cf. Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

In light of the foregoing, the Court will direct the Clerk to substitute Kevin Raycraft, the Director of the Detroit Field Office of ICE, for United States Immigration and Customs Enforcement. The Court will dismiss the United States Department of Homeland Security as a Respondent.

---

[3] The Court previously dismissed the Warden of North Lake Processing Center as a Respondent. (Order, ECF No. 6.)

## **Conclusion**

For the reasons discussed above, the Court will enter a judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions that existed under Petitioner's prior order of supervision. The Court will also order Respondents to file a status report within five days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. Further, the Court will direct the Clerk to substitute Kevin Raycraft, the Director of the Detroit Field Office of ICE, for United States Immigration and Customs Enforcement, and will dismiss the United States Department of Homeland Security as a Respondent. The Court will dismiss Petitioner's emergency motion for immediate release or, in the alternative, for [an] emergency bond hearing (ECF No. 2) as moot and grant Petitioner's motion for leave to file supplemental authority (ECF No. 9).

Dated: February 10, 2026                          /s/ Hala Y. Jarbou
                                                                  HALA Y. JARBOU
                                                                  CHIEF UNITED STATES DISTRICT JUDGE